# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE BALDEMAR ESCUDERO, on behalf of himself and other similarly situated individuals, | )<br>)<br>) Case No. 19-CV-454 |
| Plaintiff, | ) Judge Sharon Johnson Coleman |
| v. | ) |
| ACRES GROUP, and JAMES SCHWANTZ, individually, | ) |
| Defendants. | ) |

## MEMORANDUM ORDER AND OPINION

Plaintiff Jose Baldemar Escudero filed a three-count amended complaint against Defendants Acres Maintenance, Inc. ("Acres Group")[1] and James Schwantz, alleging their failure to pay Escudero and other similarly situated employees overtime wages for all time worked in excess of forty hours in a workweek in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"). Defendants have moved to dismiss Count III, pertaining to the IWPCA claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, the Court grants Defendants' partial motion to dismiss Escudero's amended complaint [26].

**Background**

Plaintiff Jose Baldemar Escudero worked for Defendant Acres Group for approximately 26 years as a landscaper and a foreman overseeing a three-person crew. Escudero alleges that he

---

[1] Defendants state that Escudero misidentified his employer. For clarity, this Court refers to Acres Maintenance, Inc. as Acres Group, as Defendants did in their briefing.

performed his duties pursuant to a collective bargaining agreement ("CBA") between Acres Group and the Production Workers Union Local 707 ("Local 707") and under other unspecified "terms agreed to between him and Defendants." Escudero attached the CBA in effect from December 1, 2016 to November 30, 2019 to the complaint. He alleges that for the past 10 years, he and other similarly situated employees spent time off-the-clock performing "preparatory and post work" for which Defendants failed to provide compensation. (Dkt. 21 ¶ 18 .) He states Defendants knew about and caused him to work off-the-clock by instructing him to clock in at 6:30 a.m. and clock out at 3 p.m. each day. However, Escudero regularly arrived at approximately 6 a.m. and worked prior to clocking in at 6:30 a.m. Despite having clocked out, Escudero says he regularly worked past 3 p.m. As a result of performing off-the-clock duties in addition to his regular schedule, Escudero alleges he and similarly situated employees worked more than 40 hours per week, which entitles them to overtime compensation that they never received.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2

**Discussion**

Defendants argue that Escudero fails to allege the existence of an agreement that entitles him to overtime pay for his off-the-clock work, as required by the IWPCA. Further, Defendants assert that the CBA between Acres Group and Local 707 "makes no reference to work performed in advance of or following the substantive work that begins when an employee clocks in for his shift." (Dkt. 28 at 5.)

The IWPCA requires employers to pay "every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3. "Wages" are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, where the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. Under the IWPCA, the plaintiff must demonstrate that his former employer owes compensation pursuant to an employment agreement. *Almy v. Kickert Sch. Bus Line, Inc.*, 722 F.3d 1069, 1075 (7th Cir. 2013) (per curiam). The IWPCA requires only that "'the employer honor his contract.'" *Singer v. Reg'l Transportation Auth.*, 338 F. Supp. 3d 791, 797 (N.D. Ill. 2018) (Feinerman, J.) (quoting *Nat'l Metalcrafters, Div. of Keystone Consol. Indus. v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986)). Under the IWPCA, an agreement is broader than a contract and "requires only a manifestation of mutual assent on the part of two or more persons." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012) (internal quotation marks omitted).

Escudero adequately pleads that his employment was subject to an agreement. Although the Court finds that Escudero's passing reference to an unspecified agreement between Defendants and Escudero lacks sufficient detail to adequately state a claim, Escudero also points to CBAs that applied to him. The most recent version of the CBA states employees are to be paid the overtime rate of time and a half for hours worked over the 40-hour threshold in any one week. (Dkt. 21-3, CBA, Art. 7 § 2.) The CBA defines scope of work as "all work historically performed in the

3

maintenance landscape industry" that includes "but [is] not be limited to" such duties as "loading and unloading of equipment from trucks" and "sweeping and clean-up." (*Id.* at Art. 1.) Both are duties that plausibly encompass the kind of "preparatory and post work" Escudero alleges he performed. Thus, Escudero sufficiently alleges that the CBA is an agreement subject to the IWPCA that entitles him to overtime pay for his off-the-clock work.

Next, Defendants assert that Escudero's IWPCA claim fails because he alleges violations over a 10-year period, but only provides proof of an employment agreement dating back to December 1, 2016. Defendants contend that in order to prevail on an IWPCA claim, Escudero must demonstrate that a valid employment agreement existed at the time of the violation. (Dkt. 28 at 5.) Here, Escudero alleges CBAs between Acres Group and Local 707 governed his employment at all relevant times; Escudero only attached to his pleadings the CBA in effect when terminated. Failure to attach the prior discoverable contracts, however, does not defeat the claim at this stage where the Court takes Escudero's well-pleaded facts and permissible inferences as true. *See Horowitz v. Animal Emergency & Treatment Centers of Chicago, LLC*, No. 1:12-cv-2561, 2012 WL 3598807, at *8 (N.D. Ill. Aug. 20, 2012) (St. Eve, J.).

Defendants argue in the alternative that if the CBA is relevant, Escudero's IWPCA claim is preempted under Section 301 of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. §185(a), and must be dismissed. Section 301 preempts all state law claims that require the interpretation of a CBA or any other covered labor contract. *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013). Such preempted state law claims include those that are "inextricably intertwined with consideration of the terms of the labor contract" (*id.* at 800) and those in which a CBA provision is the subject of the dispute. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). To determine whether a state claim is preempted, the court must "look beyond the face of plaintiff's allegations and the labels used to describe her claims and …

4

evaluate the *substance* of plaintiff's claims." *Crosby*, 725 F.3d at 800 (internal citation and quotation marks omitted). A state law claim that turns on the meaning of a CBA will escape preemption when "the particular contractual provision is so clear as to preclude all possible dispute over its meaning." *Baker v. Kingsley*, 387 F.3d 649, 658 (7th Cir. 2004); *see also Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008). Preemption applies where the parties' respective interpretations of the agreement are arguable or plausible. *Baker*, 387 F.3d at 659.

The parties disagree regarding whether a dispute exists concerning the CBA language. Escudero contends the language is abundantly clear while Defendants argue the scope of work as defined in the CBA is ambiguous and requires court interpretation. Escudero argues that the CBA clearly defines work covered by the agreement, including preparatory work such as loading and unloading equipment. In contrast, Defendants contend that the CBA makes no reference to work-related tasks employees may perform before or after their shift and that it does not clearly define work to include off-the-clock tasks. Defendants further assert that had the parties intended to compensate for off-the-clock work, such a provision would have been negotiated into the CBA.

Defendants' interpretation of the contract "may or may not be correct, … but it is at least tenable." *Baker*, 387 F.3d at 659. Because Defendants' argument is "arguable or plausible" the Court must interpret the CBA, and therefore Escudero's IWCPA claim is preempted by Section 301 of the LMRA. *See Lopez v. Smurfit-Stone Container Corp.*, No. 02 C 7347, 2003 WL 297533, at *5 (N.D. Ill. Feb. 10, 2003) (Kennelly, J.) (holding that plaintiff's right to overtime wages stemmed from the CBA and required interpretation of the agreement); *Balmes v. Illinois Bell Tel. Co.*, No. 1:15-cv-2685, 2016 WL 1019764, at *9 (N.D. Ill. Mar. 15, 2016) (Feinerman, J.) (holding that the CBA preempted an IWPLA claim because the court would have to determine if tasks performed off-the-clock count as work under the agreement). As such, dismissal of Count III is appropriate.

Having determined that Escudero's cause of action lies under Section 301, the Court next considers whether Escudero can maintain an action under that provision. *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 771 (7th Cir. 1991). Exhaustion of administrative remedies is a procedural prerequisite to maintaining a Section 301 action. *Id.* Escudero does not allege that he satisfied the CBA's exhaustion requirements. Instead, Escudero contends in his opposition that Defendants waived their preemption argument when they failed to engage in the grievance-arbitration process outlined in the agreement. This argument has no bearing on whether Escudero's claim sufficiently states a claim for relief under Section 301.[2] Rather, the proper focus is on the grievance process set forth in the CBA. As Escudero recognizes, the CBA calls for an arbitrator to settle disputes and further states that failure to file a grievance within 30 days of the alleged wrongful conduct shall be deemed a waiver of the right to arbitrate. (Dkt. 21-3, CBA, Art. 11.) Because Escudero has failed to exhaust the administrative remedies established by the CBA, Escudero cannot maintain a Section 301 cause of action. *See Lopez*, 2003 WL 297533 at \*6; *Singer*, 338 F. Supp. 3d at 799.

**Conclusion**

Based on the foregoing, the Court grants Defendants' partial motion to dismiss [26]. Count III is dismissed without prejudice. If Escudero believes that he can cure the deficiencies in his amended complaint, he may file amended papers with the Court within 30 days of the date of this

---

[2] Still, Escudero contends that by failing to pursue arbitration, Defendants have acted in a manner inconsistent with any intent to arbitrate. Here, Defendants have not sought the Court's help in resolving a contract dispute that would prompt the grievance process, but have asserted preemption as a defense to Escudero's claims. Escudero cites no authority, and the Court is not aware of any, holding that exhaustion is required before a party may assert a Section 301 preemption defense.

Order. If he does not do so, the dismissal of Claim III will convert automatically to a dismissal with prejudice.

IT IS SO ORDERED.

Date: 11/13/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge